# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"), CLP Healthcare Services, Inc. d/b/a Hospice Compassus ("CLP Healthcare Services"), and Kathi Holloway-Cordingley and Haven Smallwood (collectively, "Relators"), (hereafter, collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.   CLP Healthcare Services, a Delaware corporation based in Brentwood, Tennessee, is the parent company of various subsidiaries and affiliates who provide hospice services under the trade name "Hospice Compassus", including, but not limited to, Community Hospices of America, Inc. ("CHA"), Samaritan Care Hospice, LLC ("Samaritan"), and THI of Michigan at Detroit, LLC ("THI of Michigan").

B.   Kathi Holloway-Cordingley ("Relator Holloway-Cordingley") is an individual and resident of Nevada. On September 30, 2009, Relator Holloway-Cordingley filed a *qui tam* action in the United States District

Court for the Northern District of Alabama captioned *United States ex rel. Kathi Holloway-Cordingley v. Hospice Compassus; Community Hospices of America; Samaritan Care Hospice; CLP Healthcare Services, d/b/a Cloverleaf Partners; Cressey and Company, LLP; and James A. Deal* (Case Number 5:09-cv-1942-CLS), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Holloway-Cordingley Civil Action"). In her filed complaint, Relator Holloway-Cordingley alleged that CLP Healthcare Services, by and through its subsidiaries and affiliated entities, admitted patients to their facilities who did not qualify for such services under the Medicare Hospice Benefit Program.

C.  Haven Smallwood ("Relator Smallwood") is an individual and resident of Michigan. On October 19, 2009, Relator Smallwood filed a *qui tam* action in the United States District Court for the Eastern District of Michigan captioned *United States ex rel. Haven Smallwood v. Thi of Michigan (Delaware), LLC, a foreign limited liability company, Thi of Michigan at Detroit, LLC, a foreign Limited Liability Co., d/b/a Thi of Michigan at Clarkston, LLC, a foreign Limited Liability Co., d/b/a Hospice Compassus-Detroit, and/or d/b/a Thi of Michigan at Silverbrook Manor, LLC, a foreign Limited Liability Co., d/b/a Hospice Care in Michigan and/or d/b/a Samaritan Care Hospice Care in Michigan, CLP Healthcare*

*Services, Inc. d/b/a Hospice Compassus and/or d/b/a Community Hospices of America-Tennessee, LLC, and James A. Deal* (Case Number 2:09-cv-14116-LPZ-MKM), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Smallwood Civil Action", or together with the Holloway-Cordingley Civil Action, the "Civil Actions"). In her filed complaint, Relator Smallwood alleged that CLP Healthcare Services, by and through its subsidiaries and affiliated entities, made payments to their employees and staff which constituted illegal inducements to admit patients for hospice care and admitted patients to their facilities who did not qualify for such services under the Medicare Hospice Benefit Program.

D.  The United States contends that CLP Healthcare Services submitted or caused to be submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1.

E.  The United States contends that it has certain civil claims against CLP Healthcare Services arising from the inappropriate provision of hospice services to patients who were not eligible to receive the hospice benefit under Medicare Part A during the period from May 11, 2006, through April 2, 2011. That conduct is referred to below as the Covered Conduct.

F. This Settlement Agreement is neither an admission of liability by CLP Healthcare Services nor a concession by the United States that its claims are not well founded.

G. Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. CLP Healthcare Services shall pay to the United States $3,928,405.00 ("Settlement Amount") no later than 15 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Northern District of Alabama.

2. Conditioned upon the United States receiving the Settlement Amount from CLP Healthcare Services, and as soon as feasible after receipt

of the payment described in paragraph 1 above, the United States shall pay $716,933.91 to Relators by electronic funds transfer.

3. Following the Effective Date of the Agreement and receipt of written instructions from Relators, CLP Healthcare Services agrees to pay Relator Holloway-Cordingley a total of $49,944.31 and Relator Smallwood a total of $81,631.88 pursuant to 31 U.S.C. § 3730(d) for expenses and attorney's fees and costs arising from the filing of the Civil Actions.

4. Subject to the exceptions in Paragraph 7 (concerning excluded claims) below, and conditioned upon CLP Healthcare Services' full payment of the Settlement Amount, the United States (on behalf of itself, its officers, agents, agencies, and departments) releases CLP Healthcare Services, together with its current and former parent companies; current and former shareholders; direct and indirect subsidiaries (including, but not limited to, CHA, Samaritan and THI of Michigan); brother and sister companies; divisions; current and former owners; and current and former officers, directors, employees, agents and affiliates, and the heirs, successors and assigns of any of them ("Affiliates") from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies

Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.   Subject to the exceptions in Paragraph 7 below, and conditioned upon CLP Healthcare Services' full payment of the Settlement Amount, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release CLP Healthcare Services and its Affiliates from any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6.   OIG-HHS expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against CLP Healthcare Services and its Affiliates and/or their officers, directors, and employees from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320a-7(b) or 42 U.S.C. § 1320a-7a (permissive exclusion).

7.   Notwithstanding any term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a.   Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.   Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement;

f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g. Any liability for failure to deliver goods and services due; and

h. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

8. Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement, but agree and confirm that this Agreement is fair, adequate, and reasonable under all of the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators' receipt of the payment described in Paragraph 2, Relators and their heirs,

<200b>successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action with the express exclusion of statutory attorneys' fees and costs.

9. Conditioned upon Relators' receipt of the payment described in Paragraph 3, Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release CLP Healthcare Services and its Affiliates from any liability to Relators arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

10. CLP Healthcare Services waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement

by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11. CLP Healthcare Services fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that it has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof. CLP Healthcare Services fully and finally releases Relators from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that it has asserted, could have asserted, or may assert in the future against the Relators, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state

payer any previously denied claims related to the Covered Conduct, and agree not to appeal any such denials of claims.

13. CLP Healthcare Services agrees to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of CLP Healthcare Services, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) CLP Healthcare Services' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement; and

(5) the payment CLP Healthcare Services makes to the United States pursuant to this Agreement and any payments that CLP Healthcare Services may make to Relators, including costs and attorney's fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and the Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by CLP Healthcare Services, and CLP Healthcare Services shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by CLP Healthcare Services or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: CLP Healthcare Services further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by CLP Healthcare Services or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. CLP Healthcare Services agrees that the United States, at a minimum, shall be entitled to recoup from CLP Healthcare Services any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to

disagree with any calculations submitted by CLP Healthcare Services or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on CLP Healthcare Services or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

    d.  Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine CLP Healthcare Services' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

  14. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraphs 4 and 5 above, and Paragraph 15 (waiver for beneficiaries paragraph), below.

  15. CLP Healthcare Services agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

{H0096070.1}  *Settlement Agreement Between the United States;*
*CLP Healthcare Services, Inc.; and Kathi Holloway-Cordingley and*  13
*Haven Smallwood*
11401968.1

16. Upon receipt of the payments described in Paragraphs 1 and 3, above, the Parties shall promptly sign and file in the Civil Actions a Joint Stipulation of Dismissal of the Civil Actions pursuant to Federal Rule of Civil Procedure Rule 41(a)(1).

17. Each Party shall bear its own legal and other costs incurred in connection with this matter with the express exclusion of the statutory attorney's fees and costs as set forth in Paragraph 3 above, including the preparation and performance of this Agreement.

18. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Northern District of Alabama. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on CLP Healthcare Services' successors, transferees, heirs, and assigns.

24. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

25. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date" of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 12·27·13          BY: _____
                              LANE H. WOODKE
                              Assistant United States Attorney
                              United States Attorney, ND of AL
                              1801 4th Avenue North
                              Birmingham, AL 35203
                              Telephone: 205-244-2107


DATED: 12/23/13          BY: _____
                              ROBERT K. DECONTI
                              Assistant Inspector General for
                                Legal Affairs
                              Office of Counsel to the
                                Inspector General
                              Office of Inspector General
                                United States Department of
                                Health and Human Services

## CLP HEALTHCARE SERVICES, INC.

DATED: 12/23/13    BY: _____
　　　　　　　　　　　　　James A. Deal,
　　　　　　　　　　　　　**Chief Executive Officer**


DATED: _____    BY: _____
　　　　　　　　　　　　　**Sheila W. Sawyer**
　　　　　　　　　　　　　**Waller Lansden Dortch & Davis, LLP**
　　　　　　　　　　　　　**Counsel for CLP Healthcare Services**
　　　　　　　　　　　　　511 Union Street, Suite 2700
　　　　　　　　　　　　　Nashville, TN 37219
　　　　　　　　　　　　　(615) 850-8949
　　　　　　　　　　　　　sheila.sawyer@wallerlaw.com

## CLP HEALTHCARE SERVICES, INC.

DATED: _____    BY: _____
James A. Deal,
Chief Executive Officer

DATED: 12/23/13    BY: *Sheila W. Sawyer*
Sheila W. Sawyer
**Waller Lansden Dortch & Davis, LLP**
**Counsel for CLP Healthcare Services**
511 Union Street, Suite 2700
Nashville, TN 37219
(615) 850-8949
sheila.sawyer@wallerlaw.com

## KATHI HOLLOWAY-CORDINGLEY

DATED: 12/19/13     BY: _Kathi Holloway-Cordingley_
                        KATHI
                        HOLLOWAY-CORDINGLEY


DATED: 12/19/13     BY: _____
                        J. CLIFF JOHNSON
                        Pigott & Johnson, P.A.
                        775 N. Congress Street
                        Post Office Box 22725
                        Jackson, MS 39225-2725

## HAVEN SMALLWOOD

DATED: 12/23/13        BY: _____
                           HAVEN SMALLWOOD


DATED: 12/23/13        BY: _____
                           PATRICIA A. STAMLER
                           Hertz Schram PC
                           1760 S. Telegraph Road, Suite 300
                           Bloomfield Hills, MI  48302